The next case is Minda v. United States of America. Wait just a minute for the door to close. Okay. May it please the court. Good morning, your honors. I'm Kathleen Pakenham. I'm here this morning representing Gary Minda, who's the appellant in this case. With your permission, I'll reserve three minutes for rebuttal. Thank you. This case presents issues of first impression in this circuit that are absolutely critical with respect to taxpayer privacy. We ask this court to follow the plain meaning of Section 7431 and join with the Fourth and Eighth Circuits in interpreting that statute in the only way that gives meaningful incentives to the Internal Revenue Service to safeguard taxpayer information that is entrusted to the Internal Revenue Service. With respect to the lower court's decision and the position urged by the United States, respectfully, they do not give meaning to three critically interrelated provisions. 7431A, which fixes liability, 6103B8, which defines disclosure, and 7431C, that tells  With respect to Section 7431, that's the source of liability in this case, and it's something that the district court really never touches on. Section 7431A provides that if any employee of the United States, by reason of negligence, discloses any return information in violation of 6103. It says any return or return information, right? That's correct, your honor. Any return or return information. That issue here is return information. There is no disclosure of a return in this matter. What I'm trying to explore is what does that mean, the return or return information. So I think it's important to keep the phrase whole. Okay, thank you, your honor. With respect to a taxpayer in violation of 6103, the taxpayer may bring a civil action. Now, Congress was not concerned with the form of disclosure, and that's a lot of what's discussed in the lower court's opinion. Rather, Congress very, very broadly defined what disclosure means in this context. In 6103B8, the Congress said that making known to any person in any manner, whatever, constitutes- Why is it not one act here? There was an inadvertent mailing of 11 pages. Why is that not one act? Well, mailing- One mailing? There was one mailing, your honor. So the question of each act of disclosure is found in 7431, which is the damages computation. But there is no reference to act of disclosure in 7431A, which is the foundation of liability. Now, our position is that- In terms of setting the amount of damages, 7431C1A says $1,000 for each act. And why isn't this one mailing one act? Well, there certainly was one act of mailing. I don't dispute that. But the question of- Why is it not one act of disclosure? It is not one act of disclosure. Well, in the first instance, there is separate liability for each disclosure under 7431A. Each disclosure gives rise to separate liability by the United States. It is separate actionable offense. How many acts of disclosure does your client contend there were in this case? There were many acts of disclosure. How many? How do we count what each act is? I think that's probably the most difficult question presented in this case. The acts of disclosure, the act is the making known of confidential information. The government made known the taxpayer's name. It made known his social security number. It made known multiple items within the definition of return information under 6103. It's really hard to take the text of this provision that sets the amount of damages, which says $1,000 for each act of unauthorized inspection or disclosure of a return or return information to mean what you're contending. Help me understand, because it clearly says you get $1,000 for an unauthorized disclosure of a return. The return would presumably have many pieces of information, but the clear text seems to say if it's unauthorized disclosure of the return, it's $1,000. Why would you treat return information differently given that provision? There's a couple of different reasons why, Your Honor, I think our reading is the correct one. First, let's take a step back and look at 7431C in all of its words. The first thing it says is, in an action brought under subsection A, which is the liability section, upon a finding of liability on the part of the defendant. So there is separate liability with respect to each disclosure. The defendant shall be liable in an amount equal to the sum of, and then we get to the question of statutory damages, or the greater of actual damages plus punitive damages. The statute then goes on to say, it's $1,000 for each act of unauthorized disclosure of return or return information with respect to which such defendant is found liable. There's different liability for different disclosures here. The focus on the physical act respectfully leads to an absurd result in this case and in other cases. Take for example, an instance in which an internal revenue agent is talking to someone and they say, in one conversation, they disclose in an unauthorized way a taxpayer's name. That's one disclosure. They then give the social security number. They then tell them that that person is under criminal investigation. They then go on and on and on and make multiple disclosures. Does it matter that that's one conversation? Does it matter whether the agent stops and takes a break and comes back and reinitiates the conversation? I think the focus on act, which the government itself, in its brief, defines not as a physical act, but they say it is a thing done or a thing being done. And the thing being done here is a disclosure of confidential information. Thank you. Good morning. May it please the court, my name is Jennifer Rubin and I represent the United States in this case. As the court has done during the initial argument, we focus very much on the direct language of 7431C. That statutory damages are calculated based on $1,000 for each act of unauthorized inspection or disclosure of a return or return information. And with due respect to my opponent, the absurd result here is the one that was rather suggested by Judge Livingston's question. Let's say you had a revenue agent, did an inadvertent, and everyone agrees that there's no punitive damages question, it's just statutory damages, no actual damages. Inadvertent disclosure of two things. An entire return with all of the schedules, all of the information, completely unredacted, everything on there, income, deductions, withholdings, all source of income, their name, their social security number, and a slip of paper that had a different taxpayer's name and amount of income. You have to read that either one of two ways. Either you read it as it says, a return or return information, $1,000 for the first taxpayer, and $2,000 for the second one under my opponent's reading. Alternatively, you go and you say, well, we're going to ignore that it was a return disclosed, and we're going to count each and every single item of information, thereby reading the term a return out of the statute entirely. Moreover- How would you address your opponent's hypothetical about a conversation that went on in little by little dribs and drabs of information about the taxpayer's social security number, adjusted gross income, the fact of an investigation. Would it matter, would that be one act if it was one conversation, but if there were two conversations, or if there were two people, other people in the conversation, would that be two acts? I think it is a little difficult to understand exactly what an act would be in many of the circumstances that you can envision happening. Pages of one return get sent to multiple people in one act, but multiple disclosures in that way. Do you have a principle we should look to? Well, we would say you look at the, again, to the language each act, and what is an act of disclosure. And we would say that a conversation is a single act if you have a single conversation. Do we acknowledge there might be some messier questions out there as to whether if you had a conversation. We would say that a single conversation, even if it included multiple pieces of information, is a single act of disclosure, even if there were multiple persons present. We acknowledge, though, that that is a tougher question than the one presented here. If there were two agents present, and each of them disclosed, maybe that would be two acts. I mean, I suppose it's fact specific, and you have to look at what an act might be in that. That's right, it is fact specific. And certainly, if you had two different agents who were both doing disclosures, you might say, well, each of those agents engaged in a disclosure. There were a break, if they took a lunch break, maybe there would be two acts, and they came back and started talking again. I'd probably need to see the specific facts and exactly what was going on, but my suspicion is that would be a single act, otherwise it becomes really difficult to break down. And it doesn't appear here that that's what Congress was trying to do. But moreover, even if there was some ambiguity, the principles of sovereign unity say that you would read this provision narrowly in favor of the government. If it could be interpreted as a single act of disclosure, it should be. If it could- Could you address, please, a somewhat different question? I was somewhat concerned that the service has apparently been unable to explain how it happened that the report was erroneously sent to a third party. And I wondered why we shouldn't infer that that's an ability to explain is sufficient evidence of gross negligence to create potential liability for, I guess, punitive damages, or put the question to a jury. Ordinarily, you would expect if there had been something erroneously paper clipped, or that there would be some kind of explanation that reflects no systemic failure. But really, this went to two people in a totally unexplained way, and that concerned me. Could you address that concern? Of course. Here what we have is a lack of evidence of anything other than an accident. There's really no explanation that has been provided that would be anything other than an oops or a negligence. There's no showing of any sort of systemic problem. You know, you look- Why isn't it arguably gross negligence? I mean, someone's tax information was sent to the wrong person. Well- One would hope the IRS would operate with more care. Well, certainly, Congress seems to indicate that there are situations that would not be subject to punitive damages. And so, otherwise, it would say, you always get punitive damages. Instead, it said, assuming that punitive damages are even available here, where there are no actual damages, which we've addressed in our brief. It says, basically, in the appropriate case, if there's a showing of willfulness or gross negligence. It certainly didn't say that it's per se gross negligence. Why isn't this gross negligence? Somehow, 11 pages of someone's tax information could be sent to the wrong place. This is an oops case, rather like the National Organization of Marriage case. You don't really have any evidence that it's an oops case. The agency hasn't offered any explanation as to how this happened. It doesn't seem to have audit procedures in place that could provide an explanation. I would submit that this is a perfect, this is a situation where it makes sense there might not be a good explanation. It was an accident. And, you know, accidentally clipping something together- But actually, what evidence do you point to to support your statement that it was an accident? It could have been also someone intentionally putting it in the wrong envelope and sending it to someone, right? And we don't have an explanation? Well, there certainly is no evidence to indicate that anybody there would have had any interest in doing that. So, I would say that there needs to be some evidence of willfulness before, that really the first time there was any suggestion that it could have been willful was in the reply brief on appeal. I didn't mean to suggest that it was willful, but I'm saying that the absence of any evidence at all about what could have happened to account for this suggests to me at least gross negligence, as Judge Shin is suggesting. A couple of agents suggested, of employees suggested the possibility that it simply got printed out by network error at the wrong printer and then got mixed in. But, you know, if you've ever gotten to a place and realized, I accidentally brought a piece of paper with me that I wasn't planning on bringing with me, I didn't know how that happened. Shouldn't tax documents be handled with a little more care? I guess what I would say is- The law prohibits these kinds of disclosures. They don't prohibit you from accidentally picking up someone else's brief, for example. And given the statutory requirements, shouldn't there be some precautions put in place? What I would say is that Congress certainly left open the possibility that there would be simple negligence, that there would be situations where punitive damages were not available. And under national- I don't think that's clear, but why is this case simple negligence and not arguably gross negligence? Because the only possible explanations that have been provided are ones that would be simple negligence. That someone accidentally picked up papers together and put them in the envelope together. That there really is no theory under which this would be truly gross negligence, unless every disclosure is gross negligence, which is not what Congress said in section 6331C, C1B. It said that only certain cases are. And moreover, as we argue in our brief, if there's no actual damages, there can be no punitive damages either. Let me just ask about that. Why is that the case? If you have zero actual damages plus punitives, why can't your actual damages be calculated as zero and the statute permit punitives? The statute seems to say that actual damages must be sustained as a condition precedent to getting punitive damages. If you look at the actual language of the statute, it says actual damages sustained plus. If there's willfulness or gross negligence, punitive damages. That emphasis- It doesn't say explicitly that only if actual damages are sustained, may punitive damages be awarded, does it? It just says that in a particular case, the plaintiff is entitled to the sum of actual damages plus, if there's gross negligence or whatever, punitive damages. I believe the language is, let me just look at it just to make sure, the actual damage is sustained by the plaintiff as a result of such- Again, that could be zero. I would say that the way Congress structured it, especially with including the word sustain, which is almost inherent in the word actual damages, is almost emphasizing that actual damages needed to be sustained. But again, under the principles of sovereign immunity, if there's a narrow reading, if it's ambiguous, if it is unclear, then you need to adopt narrow interpretation, which is what the Ninth Circuit did in Siddiqui. For the reasons stated in our brief, we urge you to affirm. Thank you. So is there any evidence of gross negligence? Your Honor, it's a great question. I mean, I think oops is just frankly totally insufficient when we're talking about the kinds of highly sensitive information that taxpayers trust. There's absolutely no evidence that the service center that was handling this information had any process in place by which agents were required to, for example, before putting documents in an envelope, making sure that the name on the document matched the name on the envelope, that agents were required to prompt. Was the record robustly developed on that account about what systems were in place to check and double check and so on? No, I mean, the only evidence that exists really as to what happened at the service center was the treasury inspector general report. But the government came forward with no evidence suggesting that, for example, agents are required to promptly get up and get documents from the printer to make sure that they don't get intermingled with other things. No requirement to make sure that the right documents are getting mailed to the right person. Oops is just kind of offensive, frankly, when we're talking about this kind of thing. I wanted to go back to the question of what act means here, and I just want to make sure that it's clear. We believe that act means the making known of information, no matter what the form is. That we need clear, bright lines when it comes to this kind of liability, particularly as my colleague says, when we're dealing with questions of sovereign immunity. Imagine there are lots of examples. What happens when an agent faxes one document to several different people? What happens when an agent emails a document? I mean, the statute obviously predates lots of advances in technology, and there are many instances in which the physical act, the pressing of the button, could be construed as one act. But remember, 7431A tells us that there is separate liability for each disclosure, not for each act of disclosure. Doesn't it say each act? No, no, 7431A does not refer to act. C refers to act of disclosure for which there is liability. And you have to tie 7431C back to 7431A, which is the liability for which the damages are being calculated. It establishes the scope of liability and scope of damages that may be awarded, and that turns on the word act, doesn't it? It doesn't turn on the word act. Act is one of the words in that statute. It is each act of disclosure with respect to which there is liability. Thank you, your honors. Thank you both.